# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION

MACHELLE GROSPITZ,     )
          )
     Plaintiff,     )
          )
     v.     )     Case No. 04-4072-CV-C-NKL
          )
ABBOTT, et al.,     )
          )
     Defendants.     )

---

WENDY SMITH,     )
          )
     Plaintiff,     )
          )
     v.     )     Case No. 04-4073-CV-C-NKL
          )
ABBOTT, et al.,     )
          )
     Defendants.     )

---

M. KAYE WININGS,     )
          )
     Plaintiff,     )
          )
     v.     )     Case No. 04-4074-CV-C-NKL
          )
ABBOTT, et al.,     )
          )
     Defendants.     )

## ORDER

Before the Court is Defendants' Motion for Summary Judgment in each of the

above cases. In Machelle Grospitz's ("Grospitz") case, No. 04-4072, Defendants' Motion

1

is Doc. # 91.  In Wendy Smith's ("Smith") case, No. 04-4073, Defendants' Motion is Doc. # 50.  In M. Kaye Winings's ("Winings")[1] case, No. 04-4074, Defendants' Motion is Doc. # 49.  For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion in each case.

## I.    Background

### A.    The Parties

Plaintiffs have sued Moniteau County, Missouri ("Moniteau County"), and some of its officials.  Specifically, Plaintiffs have filed suit against Kenneth Jones ("Jones") who was the Sheriff of Moniteau County during the relevant time period.[2]  Plaintiffs also sued Tony Barry ("Barry"), Kim Roll ("Roll"), and Kenneth Kunze ("Kunze"), all of whom were Commissioners for Moniteau County during the relevant time period.[3]

Plaintiffs have also sued Miller County, Missouri ("Miller County"), and some of its officials.  Plaintiffs have filed suit against Bill Abbott ("Abbott"), who was the Sheriff of Miller County during the relevant time period, and four of his employees, including (1) Tom Viner ("Viner"), a deputy sheriff; (2) Rob Breshears ("Breshears"), a deputy sheriff; (3) Tammy Terry ("Terry"), the Jail Administrator; and (4) James Luttrell ("Luttrell"), a captain in the sheriff's office.  Additionally, Plaintiffs sued David Whittle ("Whittle"),

---

[1]Winings is the mother of Grospitz.

[2]Jones is no longer the Moniteau County Sheriff.  He is now a member of the Missouri House of Representatives representing parts of Moniteau and Cooper Counties.

[3]The Court will collectively refer to these three Defendants as the "Moniteau County Commissioners."

2

Tom Wright ("Wright"), and Johnny Klindt ("Klindt"), all of whom were Miller County Commissioners during the relevant time period.[4]

In addition to the Defendants outlined above, Plaintiff Smith brings a claim against Walter Richter ("Richter"), who was a jailer at the Miller County Jail during the relevant time period. In her Second Amended Complaint, Smith alleged that Richter "slammed her body and shoulder into the cell doors of the jail and a concrete wall, causing her to suffer pain and swelling" during her brief incarceration at the Miller County Jail. *See* Case No. 04-4073-CV-C-NKL, [Doc. # 47] at ¶ 23. Plaintiffs Grospitz and Winings do not pursue any claims against Richter.

**B.      Factual Overview**

In their Complaints, Plaintiffs challenge several aspects of their arrest that occurred in April 2001. On April 15, 2001, Defendants executed a search warrant at a residence located at 61 Catrock Road, in Eldon, Missouri, and arrested Plaintiffs. Jay Hitz ("Hitz") owned the residence, but he is not a party to these proceedings.

Plaintiffs did not reside at 61 Catrock Road at the time of the search and arrest, although Plaintiffs Grospitz and Winings had previously lived at the residence. Grospitz lived at 61 Catrock Road from sometime in 1999 through September 2000 and she paid rent of two hundred dollars per month during this time period. Winings lived at 61 Catrock Road for about three months until she moved out in January 2001. Winings also

_____

[4]The Court will collectively refer to these three Defendants as the "Miller County Commissioners."

3

paid rent during the time period she lived at the residence.

Plaintiffs specifically challenge the search warrant relied on by Defendants, the execution of that search warrant, their arrest after the execution of the warrant, and their subsequent strip search at the Miller County Jail.

### 1.    The Search Warrant

On April 11, 2001, Viner applied for a search warrant for the residence located at 61 Catrock Road.  In the application, Viner represented under oath that: (1) he had been receiving information about this location from different confidential informants that methamphetamine was being sold from the house for the previous nine months; (2) he had spoken with a confidential informant on April 11, 2001, and the informant advised Viner that he had purchased methamphetamine from the home within the previous 72 hours; (3) this confidential informant had provided reliable information in the recent past; and (4) this informant had purchased methamphetamine from the house regularly for the last two years.  *See* Pl. Ex. 5.  Viner discussed the application for the search warrant with Abbott and Luttrell and they authorized him to submit the application.  In his deposition, Abbott conceded he did not ask Viner any questions about the confidential informants nor did he review the application for the search warrant.  In fact, Abbott stated that he never reviewed search warrant applications before they were submitted to the prosecuting attorney and the court.

On April 11, 2001, the Honorable Kenneth Oswald, Associate Circuit Judge for Miller County, issued a search warrant for 61 Catrock Road based on Viner's application.

4

*See* Pl. Ex. 8. The search warrant authorized officers to search "said premises and any dwelling or vehicle located therein." *Id.* It also authorized the execution of the warrant at night "without knocking or announcing yourselves for the protection of all concerned." *Id.* The search warrant did not authorize law enforcement officials to search individuals found at the residence nor did it authorize the seizure of any items except drug-related contraband.

### 2. *Execution of the Search Warrant*

On April 15, 2001, Defendants executed the search warrant for the residence located at 61 Catrock Road. Defendants entered the home unannounced at approximately 2:00 a.m. Plaintiffs allege Defendants did not identify themselves for a "considerable" period of time after entering the residence. *See* Pl. Opp. [Doc. # 96][5] at ¶ 1.

Plaintiff Grospitz was sleeping in the basement of the home, Plaintiff Smith was in the living room with several other individuals, and Plaintiff Winings was in the kitchen with two other individuals. Plaintiff Smith arrived at the residence at around midnight-- approximately two hours before officers executed the search warrant. In the house, Defendants found marijuana and marijuana-related paraphernalia in the living room, a white powder substance with a razor blade and straw on the counter in the kitchen, and marijuana and pipes on the coffee table in the basement next to where Plaintiff Grospitz

---

[5]In Case No. 04-4072-CV-C-NKL, Plaintiffs' Opposition is Doc. # 96. The Court will refer only to the document in the lowest case number.

Case 2:04-cv-04072-NKL    Document 108    Filed 10/17/05    Page 5 of 34

was sleeping.[6]  Defendants searched all of the individuals in the residence and found a

plastic bag with white residue in Plaintiff Smith's purse.  Defendants created an inventory

outlining the items they seized from the individuals at the residence and the inventory

reflects that many personal items were seized, including, but not limited to, pocket

change, a lighter, and a key chain.  *See* Pl. Exs. 4a and 4b.  All of the individuals in the

residence were placed under arrest and transported to the Miller County Jail.

Miller County did not have any written policies regarding execution of search

warrants in April 2001.  Moreover, Viner had never received any training prior to April

2001 regarding searches.

Regarding arrests, the Miller County manual in effect in April 2001 stated that

individuals could be placed under arrest without a warrant when there was "possible [sic]

cause to believe the suspect has committed a felony or misdemeanor crime."  *See* Pl. Ex.

13 at pp. 4-5.  The Miller County Sheriff's Department had a standard, but unwritten,

policy that everybody located in a residence that was searched was removed to the Miller

County Jail, even if the search did not reveal drugs on the premises.  If drugs were found

on the premises, it was standard procedure to arrest everyone at the residence regardless

of whether they had actual possession or control of a controlled substance.

Regarding the specific arrest of Plaintiffs in April 2001, the Arrest/Booking

---

[6]Several other drug-related items and drugs were located in the residence and on the
persons of the other people in the house.  However, those listed here were the only items found
in close proximity to Plaintiffs.  Defendants also listed several drug-related items that were
seized from a camper that was on the same property as the residence.  Plaintiffs have no
connection to the camper; therefore, the Court has not included those items in this list.

Case 2:04-cv-04072-NKL   Document 108   Filed 10/17/05   Page 6 of 34

Reports from that evening reflect that Abbott was the arresting officer for all three Plaintiffs. In her deposition, Plaintiff Smith verified that Abbott was the individual who gave the order to arrest Plaintiffs and transport them to the Miller County Jail. In his deposition, Abbott could not identify probable cause to justify Plaintiffs' arrests. Viner did not arrest any individuals in the residence; instead, he believed that Breshears was the arresting officer because Breshears was head of the SWAT team.

### 3. *Police Reports Attendant to Plaintiffs' Arrests*

In his deposition, Viner testified he did not know why the other officers at the residence arrested Plaintiffs. Nonetheless, he also testified that the probable cause for arresting Plaintiff Grospitz was the presence of methamphetamine, marijuana, and a lot of drug paraphernalia in the room where she was sleeping. Viner testified that Grospitz told him she was using the basement as "her room" and that her possessions were in there, although Grospitz denies she said this. Viner further testified that the probable cause for arresting Plaintiff Smith was the bag with white residue in her purse. Finally, Viner testified that the presumed (he did not know for sure) probable cause for arresting Plaintiff Winings was because she was in the kitchen next to a canister that contained methamphetamine, a razor blade, and a straw.

Although he was not the arresting officer, Viner filled out the probable cause statements ("PCS") for each Plaintiff. Regarding Plaintiff Grospitz, Viner swore under oath in the PCS that she committed the crimes of possession of a controlled substance (methamphetamine), distribution of a controlled substance, and endangering the welfare

7

of a child. Regarding Plaintiffs Smith and Winings, Viner swore that they had committed the crime of possession of a controlled substance (methamphetamine).

In addition to the PCS for each Plaintiff, Viner also filled out the Offense/Incident Reports. Viner had to amend the reports at the request of the Miller County Prosecuting Attorney because they contained inadequate information regarding Hitz and his alleged involvement in the charges that Viner was seeking.[7] Viner filled out the reports even though he was not the arresting officer and he was not present in the residence at the time of Plaintiffs' arrests.

### 4.    *Search of Plaintiffs*

After their arrest, Plaintiffs were subjected to a pat down search at the residence. Subsequently, they were transported to the Miller County Jail where they were subjected to additional pat down searches.

Additionally, Plaintiffs were subjected to a strip search at the Miller County Jail. The search was conducted by two females in a cell with an uncovered window and the door to the cell was left open. Plaintiffs were ordered to remove their shirts and lift their breasts. Plaintiffs were then instructed to remove their pants, bend over, pull their buttocks apart and cough. Plaintiffs were instructed to cough again because they did not cough with enough force the first time. Plaintiffs observed others in the area, including male jail employees, watching the search during its entirety through the uncovered

---

[7]Plaintiffs state in their brief that the prosecutor required additional information for every individual arrested at the residence, but the cited exhibit--Pl. Ex. 17--only relates to Hitz.

Case 2:04-cv-04072-NKL    Document 108    Filed 10/17/05    Page 8 of 34

window and open door.

### a. Strip Searches in the Miller County Manuals

In the Deputies' Policies and Procedures Manual ("Deputies' P&P"), the Miller County Sheriff's Department cited a 1988 Order issued by The Honorable Scott Wright, United States Judge for the Western District of Missouri, and set forth the prerequisites for conducting a strip search. The Deputies' P&P stated that "[s]trip searches may be used only when the charge is of a felony nature and when dangerous weapons or contraband are suspected to be on the person of the individual being searched. Each detainee's right to a reasonable level of privacy must be respected." *See* Pl. Ex. 13 at pp. 4-8. To guarantee that "reasonable level of privacy," the Deputies' P&P dictates that every search "shall be conducted on premises where the search cannot be observed by any person other than the persons physically conducting the search." *Id.* at pp. 4-9. Moreover, the Deputies' P&P also requires the submission of a written report after the search is finished, and the report must include the written consent of the subject of the search. *Id.*

The stringent requirements set forth in the Deputies' P&P regarding strip searches are absent from the Miller County Jail Policies and Procedures Manual ("Jail P&P"). The Jail P&P defines strip search and states that the examining officer will examine the subject's body and clothes, but it does not contain any provisions for protecting a detainee's privacy nor does it set forth the conditions under which strip searches may be conducted. *See* Pl. Ex. 21. Moreover, the Jail P&P does not mandate that the officer

9

conducting the search must be the same gender as the detainee--a requirement found in the Deputies' P&P. *Compare* Pl. Exs. 13 and 21.

### b. Testimony Regarding Strip Searches

According to Terry, the jail administrator at the Miller County Jail in April 2001, it was the policy of the Sheriff's Department to strip search every detainee brought to the jail on drug charges, regardless of the existence of reasonable suspicion or probable cause. Terry also testified that reasonable suspicion inherently existed when a detainee was brought to the jail for a drug-related offense, thereby warranting a strip search. Terry never received training on the requirements for strip searches under Missouri law and she had never prepared a written report after the completion of a strip search.

Abbott testified that no one was strip searched at the jail without probable cause to believe they were carrying contraband. Abbott stated that any strip search would be reflected on the booking report, although Plaintiffs' searches are not reflected therein. Abbott was not aware of any detainee being forced to spread her buttocks during a strip search.[8]

Regarding the Plaintiffs' strip searches, Debra Richardson ("Richardson") was one of the two female employees who conducted the searches. Richardson stated that Terry was the other female who conducted the searches, although Terry denied during her

---

[8]In the Defendants' factual assertions in support of their Motion for Summary Judgment, the Defendants state that the strip search procedure did require the subject to spread her buttocks for visual examination. *See* Defendants' Suggestions [Doc. # 92] at ¶ 18.

10

deposition that she was present during Plaintiffs' strip searches. Richardson confirmed that Plaintiffs were strip searched as a group and that others could look into the cell where the search occurred.

Regarding her general background vis-a-vis strip searches, Richardson testified that it was standard procedure to strip search everyone who was brought into the Jail, regardless of the nature of the arrest and regardless of whether probable cause supported the search. Richardson was not advised of the limitations on strip searches contained in the Deputies' P&P nor was she trained regarding Missouri law governing strip searches.

Ralph Woods ("Woods"), a jailer at the Miller County Jail in April 2001, also testified about the jail's policies regarding strip searches. Woods stated that he did not know the jail's policy with respect to strip searches nor did he receive any training about strip searches. Pursuant to Terry's instructions, Woods testified that he strip searched every detainee who was dressed in an orange jumpsuit and housed on the second floor of the Jail. Woods only prepared a written report on a strip search if contraband was discovered on the detainee's person.

Richter, a Defendant in Smith's claim, also testified. He was a jailer on duty at the Miller County Jail when Plaintiffs were detained. Richter testified that it was his understanding that the jail's policy was to strip search every detainee regardless of the charged crime. Richter testified he conducted somewhere between one hundred and three hundred strip searches while working at the jail and he never prepared a written report unless he found contraband. Richter also never received training regarding the jail's strip

11

search policy or the applicable Missouri law.

Finally, Louie Gregoire ("Gregoire") testified about his knowledge of strip searches at the Miller County Jail when he was a jailer from 1998 to 2001. Gregoire did not know the jail's policy regarding strip searches. Gregoire stated that every inmate that was housed on the second floor of the jail was searched per Terry's instructions.

### C.     Plaintiffs' Claims

Plaintiffs filed an eleven-count Second Amended Complaint against the Defendants. Below is a summary chart outlining Plaintiffs' claims and giving a brief overview of the nature of the claim and the Defendants to whom the claim applies.

| Count | Claim | Defendants |
| --- | --- | --- |
| I | Use of Excessive Force and Unconstitutional Search, Seizure, Entry and Arrest in Violation of 42 U.S.C. § 1983 ("Section 1983") | All Defendants<br>Richter (Smith only) |
| II | Conspiracy to Violate Civil Rights under Section 1983 | All Defendants<br>Richter (Smith only) |
| III | Failure to Intervene | All Defendants<br>Richter (Smith only) |
| IV | Failure to Instruct, Train, and Negligent Retention under Section 1983 | All Defendants |
| V | Assault and Battery under Missouri law | Viner<br>Abbott<br>Jones<br>Breshears<br>Richter (Smith only) |

| VI | False Arrest under Missouri law | Viner<br>Abbott<br>Jones<br>Breshears |
|---|---|---|
| VII | Invasion of Privacy under Missouri law | Viner<br>Abbott<br>Jones<br>Breshears<br>Terry<br>Richter (Smith only) |
| VIII | Intentional Infliction of Emotional Distress ("IIED") under Missouri law | Viner<br>Abbott<br>Jones<br>Breshears<br>Terry<br>Richter (Smith only) |
| IX | Illegal search in violation of Mo. Rev. Stat. 544.193 | Abbott<br>Terry<br>Luttrell<br>Miller County<br>Miller County Commissioners |
| X | *Respondeat superior* under Missouri law | Abbott<br>Jones<br>Terry<br>Luttrell<br>Miller County<br>Miller County Commissioners<br>Moniteau County<br>Moniteau County Commissioners |
| XI | Alternative *respondeat superior* liability under Section 1983 | Abbott<br>Jones<br>Terry<br>Luttrell<br>Miller County<br>Miller County Commissioners<br>Moniteau County<br>Moniteau County Commissioners |

Case 2:04-cv-04072-NKL   Document 108   Filed 10/17/05   Page 13 of 34

In their pending Motions, Defendants move for summary judgment on all of Plaintiffs' claims.

## II. Discussion

### A. Moniteau County Defendants

Defendants move for summary judgment in favor of Jones, Moniteau County, and the Moniteau County Commissioners, because the Plaintiffs' alleged damages--from the search warrant to the conclusion of the strip searches--were incurred because of Miller County's policies. Moniteau County played no role in any of Plaintiffs' alleged injuries.

Although Jones was present during the execution of the search warrant, Plaintiffs cannot articulate what injury he caused them other than his physical presence at the scene. Plaintiffs argue that Jones could have stopped the unlawful arrest of Plaintiffs by the Miller County officials. Plaintiffs cite to no factual or legal authority to support their contention but, instead, assert that "[p]laintiffs cannot be expected to define how a particular defendants' conduct resulted in constitutional injury to them." *See* Pl. Opposition [Doc. # 96] at p. 27. However, Plaintiffs have not presented any evidence from which a reasonable juror could conclude that Jones knew a constitutional violation occurred, had the authority to interfere, and his intervention would have altered the outcome.

It is undisputed that Jones did not direct the activities of law enforcement officials during any portion of the wrongful conduct and he was merely present at the scene when the warrant was executed. Accordingly, there is no evidence to support Plaintiffs' claims

14

against Jones. Because Plaintiffs' claims against Jones fails and their claims against Moniteau County and its Commissioners are premised on Jones's alleged wrongful conduct, their claims must also fail vis-a-vis the remaining Moniteau County Defendants. Therefore, the Court will grant Defendants' Motions with respect to Jones, Moniteau County, and the Moniteau County Commissioners in their entirety.

### B.      Miller County Commissioners

Defendants move for summary judgment in favor of the Miller County Commissioners because they played no role in the alleged wrongful conduct. The parties concede that the individual county commissioners can be liable only if they "speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989). Whether an individual has "final policymaking authority" is a question of state law. *City of St. Louis v. Paprotnik*, 485 U.S. 112 (1988).

Thus, the issue before the Court is whether the Miller County Commissioners had final policy-making authority regarding the allegedly unlawful conduct of Abbott and his officers. Plaintiffs acknowledge that Missouri statutes do not give that final policy-making authority to the Commissioners. However, Plaintiffs argue that the custom in Miller County shows that the Commissioners, in fact, have final policy-making authority.

According to Plaintiffs' argument, the Commissioners' retain authority to approve the Deputies P&P and it was this manual that contained the incorrect standard for

15

conducting arrests.[9]  Plaintiffs base their argument on a sliver of testimony given by

Abbott during his deposition.  Abbott testified that the Commissioners had to approve the

Deputies P&P but he stated that they had never approved the manual.  *See* Pl. Ex. 6a at

47:16-22.  Other than Abbott's one comment during his deposition, there is no evidence

that the Commissioners retain final policy-making authority over Abbott and his

employees.  Plaintiffs did not depose the Miller County Commissioners nor did they

present any documentary or other evidence demonstrating a history of the Commissioners

approving policies for the sheriff's department.  Moreover, Abbott's testimony reflects

the Commissioners never approved the manual containing the incorrect legal standard;

thus, there is no evidence the Commissioners even knew about the faulty language in the

manual.

Based on the dearth of evidence connecting the Commissioners to Abbott and his

staff, the Court will grant summary judgment in favor of the Miller County

Commissioners.

### C.    Count XI - Respondeat Superior Liability Under 42 U.S.C. § 1983

Defendants also move for summary judgment on Count XI because courts do not

recognize *respondeat superior* liability under section 1983.  *See Crawford v. Davis*, 109

F.3d 1281 (8th Cir. 1997) (explaining that section 1983 does not impose *respondeat*

*superior* liability).  Plaintiffs concede that section 1983 does not provide for *respondeat*

---

[9]The Deputies P&P states that arrests may be based merely on "possible" cause as
opposed to the legally correct standard of "probable" cause.  *See* Pl. Ex. 13.

Case 2:04-cv-04072-NKL   Document 108   Filed 10/17/05   Page 16 of 34

*superior* liability and state that they are merely seeking to preserve the issue for appellate purposes in an attempt to seek a change in the current law.  Accordingly, the Court will grant Defendants' Motions with respect to Count XI of Plaintiffs' Second Amended Complaint.

### D.    Counts V and VI - Statute of Limitations on State Law Claims

Under Missouri law, claims for assault, battery, and false imprisonment must be filed within two years after the cause of action accrues.  Mo. Rev. Stat. § 516.140.  However, Missouri statutes also provide that a civil action against a sheriff that is predicated on "liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty" must be brought within three years after the cause of action accrues.  Mo. Rev. Stat. § 516.130.

It is undisputed that Plaintiffs' causes of action accrued on the date of the arrest and searches--April 15, 2001--and that they filed their respective Complaints on April 14, 2004.  Thus, Plaintiffs' claims are not timely if the two-year limitation in section 516.140 controls, but they are timely if the three-year limitation in section 516.130 controls.  The Court finds that the three year statute of limitations is applicable to Plaintiffs' claim for assault and battery, Count V, because it relates to assaults committed by a specific category of persons.  Otherwise, section 576.130 becomes meaningless because the statute of limitations applicable to the underlying misconduct would always control, not section 516.130.  *See Greenbriar Hills Country Club v. Director of Revenue*, 935 S.W.2d 36, 38 (Mo. 1996) (en banc) (the more specific statute controls over the more general).

17

The Court denies Defendants' Motions with respect to Count V.

For similar reasons, the Court finds that the three year statute of limitations applies to Count VI.

### E.     Counts V Through X - Immunity for Defendants

Plaintiffs filed suit against Defendants in both their official and individual capacities, and Defendants claim they are immune both in their official and individual capacities.

#### 1.     *Official Capacity Immunity*

Defendants claim that sovereign immunity bars Plaintiffs' state law claims against Miller County and the individual officers in their official capacity.  Plaintiffs concede that sovereign immunity would normally protect Defendants in their official capacities, but argue that Defendants waived their sovereign immunity under Mo. Rev. Stat. § 537.610 when they secured an insurance policy through the Missouri Public Entity Risk Management Fund ("MOPERM").  *See* Pl. Ex. 31.  Defendants do not dispute that they had an insurance policy in place in April 2001, but they dispute the scope of its coverage.

Defendants' MOPERM policy defines "Coverage" as the following:

**A.     COVERAGE**

1.     **Coverage for the Member Agency for claims on causes of action established by Missouri Law.**  For claims on causes of action established by Missouri Law, MOPERM will pay on behalf of the Member Agency the ultimate net loss which the Member Agency shall become legally obligated to pay by reason of liability arising out of:

a.　　Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles within the course of their employment;

　　　b.　　Injuries caused by the condition of a public entity's property . . . .

　　2.　　**Coverage for Member Agency for claims on causes of action other than those established by Missouri Law. . . .**

****

Nothing contained in this section, or the balance of this document, shall be construed to broaden the liability of the Member Agency beyond the provisions of section 537.600 to 537.610 of the Missouri statutes, nor to abolish or waive any defense at law which might otherwise be available to the Member Agency or its officers and employees.

*See* Pl. Ex. 31.  Missouri courts interpret this language in the MOPERM policy to limit the public entity's liability coverage to only those claims involving the operation of a motor vehicle or the dangerous condition of public property.  *Moses v. County of Jefferson*, 910 S.W.2d 735, 736 (Mo. Ct. App. 1995).  Therefore, the language in the policy extends only to those narrow categories of claims, neither of which are asserted by Plaintiffs in the instant case.

Because Defendants have not obtained insurance coverage for the tort claims asserted by Plaintiffs in Counts V through X, then they have not waived their sovereign immunity.  Accordingly, Plaintiffs' claims in Counts V though X against Miller County and the individual Defendants in their official capacities are dismissed.

### 2. *Individual Capacity Immunity*

Defendants also move for summary judgment in their individual capacities under

19

the doctrine of official immunity. Under Missouri law, "[t]he official immunity doctrine provides that public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002) (quoting *DaVee v. Mathis*, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991). Discretionary acts require "the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Warren v. State*, 939 S.W.2d 950, 953 (Mo. Ct. App. 1997) (quoting *Rustici v. Wiedemeyer*, 673 S.W.2d 762, 769 (Mo. 1984) (en banc)). It is generally held that official immunity "applies to all discretionary acts except those done in bad faith." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986) (en banc).

Plaintiffs allege Defendants are not entitled to official immunity because their acts were either not discretionary or, alternatively, they were conducted in bad faith.

### a. Counts V and VI - Assault, Battery and False Arrest

Plaintiffs pursue Count V for assault and battery and Count VI for false arrest against Viner, Abbott, and Breshears. Plaintiff Smith also pursues Count V against Richter. Execution of searches and arrests attendant thereto, including any harmful touching, are generally considered discretionary acts that fall under the ambit of official immunity. *See State ex rel. Boshers v. Dotson*, 879 S.W.2d 730 (Mo. Ct. App. 1994); *DaVee v Mathis*, 812 S.W.2d 816, 817 (Mo. Ct. App. 1991). Plaintiffs aver that the conduct was not discretionary because the arrests were carried out in accordance with department policy. However, Plaintiffs point to no policies to support their argument. In

20

*Blue v. Harrah's North Kansas City, LLC*, the court recognized that the decision to arrest is inherently discretionary because "[d]eciding whether or not to arrest someone is a matter of discretion - the officer must decide what course should be pursued based on the circumstances at hand." ___ S.W.3d ___, 2005 WL 1330702 at 10 (Mo. Ct. App. June 7, 2005). Defendants' decision to arrest Plaintiffs was a discretionary act, as was any harmful or offensive contact during the arrest or any intended apprehension thereof.

Although their decision to arrest Plaintiffs was discretionary, Defendants are not protected by official immunity if their conduct was malicious or in bad faith. The court in *Blue* expounded on the concepts of bad faith and malice, stating:

> Bad faith or malice generally requires actual intent to cause injury. A defendant acts with malice when he wantonly does that which a [person] of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others . . . .

> Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Id.* (quoting *Adolf*, 706 S.W.2d at 447). Regarding their role in Plaintiffs' arrest, there is no evidence that Abbott or Breshears conducted themselves with bad faith or malice toward Plaintiffs. While there is no doubt that a reasonable jury may infer that Abbott and Breshears were negligent regarding the arrests, there is no evidence that their conduct was motivated by ill will or a wicked purpose. Accordingly, Plaintiffs' claims in Counts

21

V and VI against Abbott and Breshears in their individual capacity are dismissed.

The Court will deny Viner's request for official immunity. Viner identified three CIs who purportedly provided him information about the activities at 61 Catrock Road.

During discovery in the instant case, the Court ordered Viner to name the confidential informants who were the source of the information contained in his application. Viner identified three individuals as the informants and Plaintiffs' counsel deposed two of the three informants; the third informant was deceased. Confidential Informant No. 1 ("CI1")[10] testified that he had never provided Viner with information about 61 Catrock Road or any of the Plaintiffs. In fact, CI1 testified that he had not been on Catrock Road in ten years and he had no information about it. Confidential Informant No. 2 ("CI2") testified that he had never been an informant for Viner in any matter and he denied providing any information about Catrock Road or Plaintiffs. Thus, there are sufficient facts to support an inference that Viner fabricated the information that was the basis of the search warrant and the arrests and, if true, a reasonable juror might find that Viner had an intent to cause injury. Accordingly, Plaintiffs' claims in Count VI against Viner will not be dismissed.

Additionally, the Court will deny Richter's request for official immunity from Count V. Based on the record before the Court, a reasonable juror could find for Plaintiff

_____

[10]The names of the two informants who were deposed were not revealed to Plaintiffs or their counsel. However, Defendants' counsel stipulated that the deposed individuals were the informants identified by Viner.

Case 2:04-cv-04072-NKL   Document 108   Filed 10/17/05   Page 22 of 34

Smith on her assault and battery claim against Richter.  Accordingly, Count V against Richter will not be dismissed.

### b.      Count VII - Invasion of Privacy

Plaintiffs pursue a common law invasion of privacy claim against Viner, Abbott, Breshears, and Terry.  Plaintiffs' claim encompasses both the search at 61 Catrock Road as well as the strip searches conducted at the jail.

Regarding the searches at the residence, the Court will grant Defendants' Motions as to Abbott and Breshears, but deny them as to Viner in accordance with the reasoning set forth above.

Plaintiff Smith also pursues this claim against Richter.  Smith's Second Amended Complaint fails to articulate any basis for finding Richter liable for invasion of privacy either in the context of searching the residence or her strip search.  Plaintiffs' Opposition does not clarify why Richter should be held liable under this Count; therefore, the Court will grant Defendants' Motions as they relate to Richter under Count VII.

Regarding the strip searches conducted at the Jail, the Court will grant Defendants' Motions on Count VII with respect to Breshears and Viner because it does not appear they played any role in the execution of the searches.  It will deny the Motions with respect to Abbott and Terry.

A reasonable jury might infer that Abbott acted with reckless disregard for Plaintiffs' constitutional rights when he authorized strip searches at the Miller County Jail.  The evidence demonstrates that Judge Wright issued an Order in 1988 advising

23

Miller County when and under what circumstances strip searches could be conducted in the Miller County Jail. The limitations imposed by Judge Wright were incorporated into the Deputies P&P but not the Jail P&P. Thus, Abbott was on notice that failure to adhere to certain standards regarding strip searches could violate detainees' constitutional rights. Nonetheless, the record reflects that Abbott made no effort to adhere to the Order. A jury could find that instead, he endorsed a policy whereby every detainee was strip searched regardless of the existence of articulable suspicion to support the search. Such a directive is contrary to the United States Constitution, and a reasonable jury may look at Abbott's conduct and determine that he was recklessly indifferent to a known risk to Plaintiffs' constitutional rights, and thereby acted in bad faith, with respect to Plaintiffs' strip searches.

Just as a reasonable jury may find that Abbott acted in bad faith with respect to strip searches, a reasonable jury may conclude that Terry also acted with reckless indifference toward Plaintiffs' constitutional rights. Terry established the jail's policy regarding strip searches. The Jail P&P that she helped to develop does not contain the strip search limitations imposed by Judge Wright, nor the limitations contained in the Deputies' P&P. Moreover, Terry was actively engaged in the Plaintiffs' strip searches that were held in non-private rooms, which appears to violate the Deputies' P&P provisions.

Therefore, regarding Plaintiffs' strip searches, the Court will deny Defendants' Motions with respect to Abbott and Terry.

24

### c. Count VIII - Intentional Infliction of Emotional Distress

Plaintiffs pursue Count VIII against Viner, Abbott, Breshears, and Terry for intentional infliction of emotional distress. Plaintiff Smith also pursues Count VIII against Richter.

Regarding Breshears, there is no evidence to find that Breshears's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. 2000) (quotation omitted). At worst, Breshears executed a faulty arrest at the scene of 61 Catrock Road, but there is no evidence that he is responsible for the search warrant, the policies underlying the strip searches, or that he physically assaulted any of the Plaintiffs--all of which are charges that have been levied against the remaining Defendants in this Count. Therefore, the Court will grant Defendants' Motions with respect to Breshears on Count VIII.

Based on the record before the Court, a reasonable jury could find for Plaintiffs on Count VIII against the remaining Defendants. Accordingly, the Court will deny Defendants' Motions with respect to Count VIII against Viner, Abbott, Terry, and Richter.

### d. Count IX - Illegal Search Under Mo. Rev. Stat. § 544.193

Plaintiffs pursue a state law claim against Abbott, Terry, Luttrell, and Miller County based on Mo. Rev. Stat. § 544.193.

25

Subsection (2) of section 544.193 provides:

> 2. No person arrested or detained for a traffic offense or an offense which does not constitute a felony may be subject to a strip search or a body cavity search by any law enforcement officer or employee unless there is probable cause to believe that such person is concealing a weapon, evidence of the commission of a crime or contraband.

Mo. Rev. Stat. 544.193(2). In subsections (3) and (5), the statute states:

> 3. *All strip searches and body cavity searches conducted by law enforcement officers or employees in this state* shall be performed by persons of the same sex as the person being searched, and shall be conducted on premises where the search cannot be observed by any person other than the persons physically conducting the search . . .
>
> 5. *Every law enforcement officer or employee conducting a strip search* or body cavity search shall:
>
> > (1) Obtain the written permission of the person in command of the law enforcement agency in which the strip search or body cavity search is to be conducted . . .
> >
> > (2) Prepare a report regarding the strip search . . .

A copy of the report shall be furnished to the person who was searched.

Mo. Rev. Stat. 544.193(3) and (5) (emphasis added). Defendants argue that section 544.193 applies only to strip searches that are conducted pursuant to non-felony arrests. Thus, according to Defendants, section 544.193 provides no relief to Plaintiffs because they were all arrested on felony charges.

Clearly portions of section 544.193 apply to strip searches conducted after non-felony arrests. As outlined above, subsection (2) clearly applies only to non-felony

26

arrests, as does subsection (4).[11]  However, the other subsections of section 544.193 do

not contain the same limiting language that narrows their coverage to non-felony arrests

nor does the title of the statute or any introductory language indicate that its entire scope

is limited to searches conducted in the non-felony context.  Thus, the remaining

provisions of section 544.193, specifically subsections (3) and (5) that require written

reports and the conditions under which strip searches can occur, apply to all strip searches

conducted in Missouri--not just those in the non-felony arrest context.  Plaintiffs have

proffered sufficient evidence on which a reasonable jury may rely to find that Defendants

violated subsections (3) and (5) of section 544.193.  Accordingly, the Court will deny

Defendants' Motions with respect to Count IX.

However, regarding Luttrell, Plaintiffs have not offered any evidence suggesting

that he engaged in the unlawful searches or that he was involved in them in any other

respect.  Therefore, the Court will grant Defendants' Motions with respect to Luttrell on

Count IX.

### e.      Count X - *Respondeat Superior Liability*

Plaintiffs pursue Count X against Abbott, Terry, Luttrell, and Miller County.

Plaintiffs' Second Amended Complaints are not clear regarding the basis of the claims for

*respondeat superior* liability.  The concept of *respondeat superior* is traditionally a basis

---

[11]Subsection (4) provides that body cavity searches in the context of a non-felony arrest
must be conducted pursuant to a search warrant in sanitary conditions and be performed by a
physician.  Mo. Rev. Stat. § 544.193(4).

for imputing liability rather than an independent cause of action and Plaintiffs do not clarify their position in their pending briefs. Accordingly, the Court will grant Defendants' Motions with respect to Count X.

### F. Counts I Through IV - Section 1983 Claims

Defendants also move for summary judgment on Plaintiffs' claims filed under section 1983. Defendants challenge Plaintiffs' section 1983 claims on two grounds: (1) Plaintiffs' standing to challenge the search warrant, and (2) probable cause existed for Plaintiffs' arrests.

#### 1. *Plaintiffs' Standing*

Defendants argue that Plaintiffs do not have standing to challenge the search warrant obtained by Viner because they did not have a legitimate expectation of privacy in the residence at 61 Catrock Road.

Defendants concede that overnight guests in a home have a legitimate expectation of privacy. *See Minnesota v. Carter*, 525 U.S. 83 (1998) (citing *Minnesota v. Olson*, 495 U.S. 91 (1990)). However, Defendants assert that an overnight guest must have the *permission* of the home's resident rather than merely the *consent* of the resident. Although Defendants' argument is perplexing, it appears they are attempting to distinguish between the concepts of permission and consent based on parsing language contained in Supreme Court precedents.

*Carter* held that guests at a home, who were alleged to be overnight guests, were not overnight guests with an expectation of privacy when the non-residents were there

28

purely for a drug transaction rather than a social purpose, the non-residents were on the premises for a relatively short period of time, and the non-residents had no prior relationship to the premises or its tenant. *Id.* at 84.

In the instant case, all the relevant facts suggest that Plaintiffs were overnight guests at 61 Catrock Road and that Hitz acquiesced in their presence on the property. Whether his acquiescence is categorized as permission or consent, Defendants fail to draw a material distinction between the terms. Plaintiff Grospitz was a previous resident at 61 Catrock Road and she was asleep in the basement when the search warrant was executed, thereby reflecting her status as an overnight guest. Plaintiff Winings was also a previous resident at 61 Catrock Road and although she was not asleep when the warrant was executed, she was there in the middle of the night and she manifested an intent to remain there throughout the evening. Although Plaintiff Smith had only recently arrived at the residence when the warrant was executed, she was a frequent visitor to 61 Catrock Road,[12] she was there for a social purpose, and she had a previous relationship with Hitz. Given the time of the raid--approximately 2:00 a.m.--and their relationship to the property, it is logical to infer that Plaintiffs were overnight guests at 61 Catrock Road and had a legitimate expectation of privacy. At a minimum, there are disputes of fact that require jury resolution. Accordingly, the Court will deny Defendants' Motions.

### 2. *Probable Cause to Support Plaintiffs' Arrests*

---

[12]Viner testified in his deposition that he personally witnessed Smith at the residence seven or eight times during the nine months before April 2001.

Defendants also assert that sufficient probable cause existed for Plaintiffs' arrest at the residence and that they are therefore entitled to qualified immunity. The defense of qualified immunity is available if "a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information [the officer] possessed." *Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2000) (citations omitted). Thus, the doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations omitted).

The doctrine of qualified immunity authorizes plenty of room for error. Courts hold that "[i]t is well settled that law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Johnson v. Schneiderheinz*, 102 F.3d 340, 341 (8th Cir. 1996) (quotation omitted). Thus, in section 1983 cases where probable cause for an arrest is challenged, "[t]he issue for immunity purposes is not probable cause in fact but arguable probable cause" about which "officers of reasonable competence could disagree." *Id.* (quotation omitted). To determine the existence of probable cause, courts look to "the objective facts available to the officers at the time of the arrest." *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000).

Based on the facts outlined herein, a jury could find that the officers were neither reasonable nor competent if they believed that there is probable cause to arrest everyone in the house because drugs were found there. First, Plaintiffs were restrained and placed under arrest before any search of the residence occurred. Thus, Defendants' argument

30

that several drug-related items were found in the home does not support probable cause where the existence of those items was not discovered until after the arrest was completed. Second, none of the items found in the residence can be attributed to Plaintiffs. There is simply no nexus between Plaintiffs and the illegal contraband except their presence in the home.

None of the Defendants could articulate a probable cause basis for arresting Plaintiffs during discovery in this case other than mere presence in a home where drugs are found. They did not allege any facts unique to this situation to justify the arrests. In fact, Defendants are not even sure *who* arrested Plaintiffs, much less articulate *why* Plaintiffs were arrested. According to the testimony submitted by Defendants, it was the standing policy of Miller County to arrest anyone who was present in a home with narcotics regardless of their proximity to the contraband or their nexus to the illegal substances. This does not constitute probable cause to arrest and a reasonable jury may look to the underlying facts and determine that Defendants did not act reasonably or competently under the circumstances. Accordingly, the Court will deny Defendants' Motions.

### G. Summary

Based on the foregoing, Plaintiffs' claims have been whittled down to reflect the following outstanding claims in this case:

| Count | Claim | Defendants |
|-------|-------|-----------|

31

| I | Use of Excessive Force and Unconstitutional Search, Seizure, Entry and Arrest in Violation of 42 U.S.C. § 1983 ("Section 1983") | Abbott<br>Viner<br>Breshears<br>Terry<br>Luttrell<br>Miller County<br>Richter (Smith only) |
|---|---|---|
| II | Conspiracy to Violate Civil Rights under Section 1983 | Abbott<br>Viner<br>Breshears<br>Terry<br>Luttrell<br>Miller County<br>Richter (Smith only) |
| III | Failure to Intervene | Abbott<br>Viner<br>Breshears<br>Terry<br>Luttrell<br>Miller County<br>Richter (Smith only) |
| IV | Failure to Instruct, Train, and Negligent Retention under Section 1983 | Abbott<br>Viner<br>Breshears<br>Terry<br>Luttrell<br>Miller County |
| V | Assault and Battery under Missouri law | Viner - Individual Capacity<br>Richter - Individual Capacity |
| VI | False Arrest under Missouri law | Viner - Individual Capacity |

32

| VII | Invasion of Privacy under Missouri law | Viner - Individual Capacity[13]<br>Abbott - Individual Capacity[14]<br>Terry - Individual Capacity |
|---|---|---|
| VIII | Intentional Infliction of Emotional Distress ("IIED") under Missouri law | Viner - Individual Capacity<br>Abbott - Individual Capacity<br>Terry - Individual Capacity<br>Richter (Smith only) - Individual Capacity |
| IX | Illegal search in violation of Mo. Rev. Stat. 544.193 | Abbott - Individual Capacity<br>Terry - Individual Capacity<br>Miller County |

## III. Conclusion

Accordingly, it is hereby ORDERED that

(1) Defendants' Motion for Summary Judgment in Case No. 04-4072-CV-C-NKL [Doc. # 91] is GRANTED in part and DENIED in part in accordance with the terms of this Order;

(2) Defendants' Motion for Summary Judgment in Case No. 04-4073-CV-C-NKL [Doc. # 50] is GRANTED in part and DENIED in part in accordance with the terms of this Order; and

(3) Defendants' Motion for Summary Judgment in Case No. 04-4074-CV-C-NKL [Doc. # 49] is GRANTED in part and DENIED in part in accordance with the terms of this Order.

---

[13]Viner remains in the case under Count VII only for the invasion of privacy as it relates to the raid at the residence and not Plaintiffs' strip searches.

[14]Abbott and Terry remain in the case under Count VII only for the invasion of privacy as it relates to Plaintiffs' strip searches and not the search of the residence.

s/ Nanette K. Laughrey

NANETTE K. LAUGHREY
United States District Judge

DATE:  October 17, 2005
Jefferson City, Missouri